2020 PA Super 248

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ARDELL MATTHEW GROSS | : | |
| | : | |
| Appellant | : | No. 576 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 30, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0001820-2017

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.:                    **FILED OCTOBER 14, 2020**

Ardell Matthew Gross appeals from the judgment of sentence entered for his convictions for first-degree murder and aggravated assault. He challenges the grant of the Commonwealth's motion *in limine* and an evidentiary ruling. We affirm.

Gross shot and killed his uncle, Richard Smalley, in October 2017, and Detective Dale Moore responded to the scene. He administered a pre-arrest breath test ("PBT") to Gross allegedly showing a blood alcohol content of .213 percent. Gross gave a statement in which he talked not only about the instant case but also about a sexual assault approximately eight to nine years before the shooting, in which Gross was the victim. The assailant in the sexual assault was not the victim of the shooting at issue here, Richard Smalley. However, Detective Moore – the detective investigating the instant shooting – had

investigated the sexual assault. Detective Moore did not charge anyone in the sexual assault.

In the present case, police arrested and charged Gross with first- and third-degree murder and aggravated assault.[1] The Commonwealth filed motions *in limine* asking the trial court to preclude any mention of the sexual assault case and of the PBT. Regarding the sexual assault, the Commonwealth argued irrelevance. N.T., Motions *in Limine* Hearing, 11/13/18, at 11.

> The Commonwealth believes that this potential evidence, if they jury were to hear it, is irrelevant. Any alleged prior victimization is not a factual issue that this jury would need to find in order to make a determination as to whether or not Mr. Gross shot Mr. Smalley on that particular date and time, which was almost ten year [*sic*] later - - nine years later.
>
> The only purpose of this would be to attempt to garner sympathy and to confuse the jury as to what actually was happening that day. So we do not feel it's relevant, and we'd ask that you exclude it.

*Id.* The Commonwealth also pointed out that the alleged assailant in the sexual assault was not the murder victim in the instant case. *Id.* at 13.

Gross responded that the sexual assault investigation was relevant to respond to Detective Moore's questioning of Gross during the investigation about why Gross did not call police if he was afraid of his uncle. Gross maintained that Detective Moore did a poor job investigating the sexual assault case and that the prior failure of police to resolve the sexual assault

---

[1] 18 Pa.C.S.A. §§ 2502(a), (c) and 2702.

- 2 -

case explained Gross's failure to call police in response to his uncle's behavior. He also maintained it was relevant because Detective Moore asked Gross about the assault while questioning Gross about the instant case, and thus illuminated Gross's "mindset" during the questioning:

> [Defense Counsel]: I'd point out that it was Detective Moore that brought up the name of the rapist. It was Detective Moore that failed to do an investigation of that case, and it's Detective Moore that is saying things like, well, why didn't you just call the police to help you.
>
> Well, I think that kind of answers the question, why you don't call the police to help you when you report a raping, a drugging and an assault, and Dale Moore basically does nothing.
>
> Moore brought it up in the interview. Moore has got to live with the fact that he did nothing in that case to investigate the savage attack of my client. It's relevant to his mindset in terms of what they're going to argue, he should have locked the door.
>
> ***
>
> It's relevant to his mindset. It's relevant to his malice. It's relevant to his intent. It's very relevant. They brought it up. They've got to live with it.

*Id.* at. 11-12.

Regarding the PBT evidence, the prosecution argued that such evidence is *per se* inadmissible at trial. *Id.* at 14.

> [Commonwealth]: Your Honor, the next motion is a motion to preclude PBT evidence. There is evidence in this case that Mr. Gross was given a PBT prior to being taken to the Spring Township police department.

We have provided the results and we've gone through the case law and the case law that we were able to find dealt with DUIs and underage drinking, and as this Court is well aware, the only time that a PBT is admissible to show probable cause to make an arrest and only at that point to determine whether or not there's a presence or absence of alcohol.

The actual reading of a PBT is inadmissible, and clearly, at the time of trial, even the indication that a PBT was done is inadmissible.

The case law goes through and talks about the purpose of the PBT for purposes of underage drinking, and that is to show the presence, because one of the elements you have to show is the presence of alcohol.

*Id.*

Gross responded that the trial court should allow the evidence because it was "relevant to Gross's consent to the interrogation and to his forming [the] specific intent" required for first-degree murder. *Id.* at 17. He also cited *Commonwealth v. Ward*, 605 A.2d 796, 797 (Pa. 1992), which stated that "an accused has a fundamental right to present evidence so long as the evidence is relevant and not excluded by an established evidentiary rule." *Id*.

The trial court granted the Commonwealth's motion to preclude any mention of the sexual assault case, finding that "[a]ny evidence or testimony of the assault would have been confusing or misleading to the jury." Trial Ct. Op., filed, 4/8/19 at 3. It found that "Detective Moore's failure to investigate the alleged sexual assault of [Gross] was slightly probative of the intent element of first[-]degree murder." *Id.* However, it nonetheless concluded that it was properly excluded because "the assault was not alleged to have been

- 4 -

perpetrated by the victim in this case and the alleged assault was reported eight years before the events leading to [Gross's] convictions in this case occurred." *Id.*

The trial court also precluded the PBT results. It noted that the case law regarding the exclusion of PBT results did not directly address "a defendant's use of PBT results as evidence of voluntary intoxication." *Id.* at 4. It nevertheless excluded them, finding the case law to be controlling. It explained, "Given the unreliable nature of PBT results, introducing them would not only have been in contravention of settled case law, it was likely to have misled the jury into believing the results of PBTs are definitive evidence of intoxication, even if the results were used only as impeachment evidence." *Id.* The court also concluded that excluding this evidence did not interfere with Gross's presentation of his voluntary intoxication defense because "[Gross] could have mounted this defense by other means through the trial." *Id.* at 5.

At trial, Detective Moore testified that when he responded to the scene of the shooting, Gross told him that the night beforehand, he had been at the hospital with his dying grandfather when his uncle "showed up" and "said I'm coming over tomorrow and I'm going to take everything." N.T., Trial, 11/27/2018, at 208. The detective said that Gross explained that when his uncle showed up the next day, "I told him to leave. He didn't. I shot him. I shot him twice. The first time I tried to shoot him in the leg." *Id.* at 209.

Detective Moore then testified that while he did believe Gross was intoxicated when he was talking to him at the scene, he was "not overly concerned about his alcohol use":

> Q: During that period of time, did you make any observations about the defendant's level of intoxication?
>
> A: I did believe he was drinking, but I talked to him. He was able to answer questions. He seemed to answer them in the correct context, the right order, like having memory recall.
>
> So while I did believe I wouldn't ride in a car with him, I did believe – he wasn't swaying. He was able to walk. So while I did believe he was intoxicated for driving a car purposes, I did not – I was not overly concerned about his alcohol use.

*Id.* at 213.

Defense counsel objected at sidebar that Detective Moore's testimony about Gross's degree of intoxication "opened the door" to the PBT evidence. *Id.* at 218.

> Your Honor, I believe they opened the door to the PBT evidence by the examination of this witness as to his level of intoxication as to why – I've never been given an answer as to why this witness would give him a PBT but I think his testimony today opened the door to the fact that he gave it to him, what the result was and why he hid it, recorded on – and never turned it over until we demanded the party turn it over in January.

*Id.* at 218-19. The Commonwealth responded that it questioned Detective Moore about his observations of Gross's intoxication because it anticipated that Gross might present a voluntary intoxication defense. *Id.* at 219. The

trial court concluded that the Commonwealth had not opened the door for the admission of the PBT. ***Id.*** at 220.

The jury convicted Gross of the above offenses and the trial court sentenced Gross to life imprisonment for the murder charge and imposed no further penalty for aggravated assault. Gross filed a post-sentence motion challenging the preclusion of evidence of the sexual assault case and the PBT, as well as the ruling that the Commonwealth did not open the door to the admission of the PBT. The trial court denied the motion and this timely appeal followed.

Gross raises the following issues before this Court:

> I.   Did the lower court abuse its discretion in excluding evidence that [] the arresting officer gave [Gross] a Portable [sic] Breath Test during questioning, that the result of that test was .213 blood alcohol content, that the officer did not include the testing or the result in any report, and kept the result hidden on his personal phone until the District Attorney directed him to turn it over?
>
> II.  Did the lower court abuse its discretion when it found that the Commonwealth did not open the door to the admission to this evidence when it solicited testimony from the detective about his observations of [Gross's] level of intoxication and that he "was not overly concerned about it"?
>
> III. Did the lower court abuse its discretion in granting a Commonwealth Motion *in Limine* excluding evidence that [Gross] had been raped years earlier and the arresting officer in the instant matter, refused to investigate?

Gross's Br. at 4 (suggested answers omitted).

- 7 -

We address Gross's first and third issues together as they both deal with the trial court's granting of the Commonwealth's motions *in limine*. We review the grant of a motion *in limine* for an abuse of discretion. ***Commonwealth v. Valcarel***, 94 A.3d 397, 398 (Pa.Super. 2014). An abuse of discretion exists where there is an "overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Santos***, 176 A.3d 877, 882 (Pa.Super. 2017).

Gross first maintains that the trial court should have denied the Commonwealth's motion *in limine* regarding Gross's sexual assault. He argues that the evidence was relevant to show Detective Moore's alleged bias against Gross. Gross's Br. at 22-23. He further argues that evidence about Detective Moore's alleged "failure to investigate" the sexual assault was relevant to refute any testimony or argument that the reasonable response to his uncle's behavior would have been to call the police. *Id.* at 24. He further argues that such evidence would have explained Detective Moore's testimony that Gross appeared angry during his interview with police. *Id.* at 23-24.

The Commonwealth responds that although evidence of bias, interest, or corrupt motive is relevant to impeach a witness's testimony, Gross has not explained how Detective Moore's involvement in the prior case evidenced any such bias, interest, or corrupt motive. The Commonwealth further points to the limitation on impeaching testimony with evidence of a collateral matter. ***See Commonwealth v. Boczkowski***, 846 A.2d 75 (Pa. 2004);

*Commonwealth v. Guilford*, 861 A.2d 365, 369 (Pa.Super. 2004) ("[A] witness may not be contradicted on 'collateral' matters . . . and a collateral matter is one which has no relationship to the case at trial") (citation omitted).

The trial court determined that although the evidence was, at best, "slightly probative," it was nonetheless properly precluded because it risked confusing the jury. Trial Ct. Op. at 3. The court pointed out that the victim in the shooting was not Gross's attacker in the sexual assault case, the attack occurred eight to nine years before the shooting, and thus concluded that the evidence would thus be confusing or misleading to the jury.

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Evidence is relevant "if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact." *Commonwealth v. Antidormi*, 84 A.3d. 736, 749 (Pa.Super. 2014) (quoting *Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa.Super.2009)). Even if evidence is relevant, the court may nonetheless exclude it if its probative value is outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

The trial court's preclusion of evidence of the sexual assault was not an abuse of discretion. While Gross's prior sexual assault may have been somewhat probative as a response to some aspects of the Commonwealth's case, on balance, it was a collateral issue and would easily have confused the

issues for the jury. It was not directly relevant to any element of the murder charges and would not have refuted proof that Gross possessed the *mens rea* for those charges. Gross's uncle was undisputedly not Gross's attacker in the sexual assault, nothing here suggests that on the night of the shooting his uncle attempted to sexually assault him, and we do not see how the prior sexual assault would otherwise explain away his reaction to his uncle. As for Gross's bid to use the evidence to respond to the Commonwealth's case, allowing the sexual assault investigation into evidence would have created a significant danger of distracting the jury into a collateral issue. Admitting the evidence risked the jury focusing on Detective Moore's actions in the prior investigation, rather than the evidence for and against the present charges. The trial court did not abuse its discretion in granting the Commonwealth's motion to preclude this evidence.

Next, Gross challenges the preclusion of the PBT results. According to Gross, "Evidence of a defendant's intoxication is relevant in a first[-]degree murder case because such intoxication speaks to the defendant's capacity for possessing the requisite intent to kill." Gross's Br. at 14. He does acknowledge that courts have held PBT results inadmissible at trial in a DUI prosecution. *Id.* However, he argues that precluding them in a first-degree murder prosecution on the ground that they are not reliable is misguided. He asserts that "the exclusion of the evidence on that basis ignores . . . that Detective Moore had every opportunity to ask [Gross] to go to the hospital for a blood draw to obtain a definitive blood alcohol reading and did not do so." *Id.* at 16.

- 10 -

He further contends that Detective Moore "hid" the PBT results by only recording the results on his cell phone in a screenshot of the readout and not mentioning the PBT in any police report. Gross states he only received a copy of the screenshot after the preliminary hearing, and it indicated a blood alcohol content of .213 percent. *Id.* at 9. Gross maintains that the evidence was substantively relevant to support his intoxication defense and the court therefore should have denied the motion *in limine*. *Id.* at 16-17.

For its part, the Commonwealth asserts that the trial court properly precluded the PBT results. It states that "our Courts have continually prohibited the admission of PBTs due to the lack of reliability." Commonwealth's Br. at 10.

If an officer has reasonable suspicion to believe a person is driving "or in actual physical control" of a motor vehicle while under the influence of alcohol, the Vehicle Code authorizes a police officer before arresting the person to administer a PBT "on a device approved by the Department of Health for this purpose." 75 Pa.C.S.A. § 1547(k). However, "[t]he sole purpose of this [PBT] is to assist the officer in determining whether or not the person should be placed under arrest." *Id.*

"PBT results are not admissible at trial." *Commonwealth v. Marshall*, 824 A.2d 323, 328 (Pa.Super. 2003). In *Marshall*, we rejected the Commonwealth's attempt to introduce PBT results at trial, explaining that the statute authorizing PBTs, 75 Pa.C.S.A. § 1547, explicitly limits their use to "assist[ing] the officer in determining whether or not the person [suspected

of DUI] should be placed under arrest." *Id.* (quoting 75 Pa.C.S.A. § 1547(k)). We further pointed out that the administrative approval of PBT devices is limited to "field screening only," because "PBT results are not sufficiently reliable to establish at trial the requisite elements of a DUI offense." *Id.*

The admissibility of PBT results in cases under the Crimes Code, rather than the Vehicle Code, was at issue in *Commonwealth v. Brigidi*, 6 A.3d 995, 996 (Pa. 2010). There, the defendant was convicted of the summary offense of underage drinking. *See* 18 Pa.C.S.A. § 6308. The Commonwealth had admitted into evidence at trial the results of PBT, over a defense objection.

The Pennsylvania Supreme Court concluded the trial court had improperly admitted the PBT results. The Court explained that the administrative approval under subsection 1547(k) was limited to "field use of the pre-arrest breath testing unit to assist in determining probable cause." *Id.* at 1000. The Court thus held that the Commonwealth could not "rely on statutory and administrative approvals of pre-arrest breath testing devices pursuant to Section 1547 of the Vehicle Code to justify the admission of test results into evidence in prosecutions under the Crimes Code." *Id.* at 1001. The Court stated that the Commonwealth could in another case under the Crimes Code obtain admission of such evidence through established judicial means, *i.e.*, with evidence and argument sufficient to establish admissibility. *Id.* However, the Court disallowed the evidence there because the Commonwealth had failed to avail itself of such established means.

Guided by **Marshall** and **Brigidi**, we conclude that the trial court did not abuse its discretion in precluding the PBT results from the trial of this case. Like the Commonwealth in **Brigidi**, he has not presented evidence and argument sufficient to establish their admissibility. Gross's claim that the results were relevant to his defense does not change that, or override the text of subsection 1547(k) or the holdings of **Brigidi** and **Marshall**. The trial court properly precluded the PBT results.

In his last issue, Gross contends that the trial court erred in concluding that the Commonwealth did not open the door to the admission of the previously precluded PBT evidence. He maintains that the Commonwealth did so by eliciting Detective Moore's testimony that he was not "overly concerned" about Gross's intoxication. Gross argues that he should have been able to cross-examine Detective Moore as follows:

> "If you were not overly concerned why did you give him the PBT?" "Did your level of concern change when you saw that the result of that PBT was a .213 percent blood alcohol[?]" "If you were not overly concerned about that level why did you hide it on your cell phone instead of noting it in a police report?"

Gross's Br. at 19-20.

"A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." **Commonwealth v. Nypaver**, 69 A.3d 708, 716 (Pa.Super. 2013). We review rulings on the scope of cross-examination for abuse of discretion. **Commonwealth v. Murphy**, 182 A.3d 1002, 1006 (Pa.Super. 2018).

- 13 -

Gross is not entitled to relief on this issue. If, as Gross contends, Detective Moore harbored some concern about Gross's drinking, the detective's testimony that he was not "overly concerned" was not misleading, as he also testified that Gross had been drinking to a point that he "wouldn't ride in a car with him." Moreover, the PBT results would not have allayed any misimpression about the degree of Detective Moore's "concern." Such evidence related strictly to the test results, not to Detective Moore's "concern." Furthermore, even assuming that Detective Moore's testimony created a false impression that he was in fact not concerned about Gross's alcohol use, and thus "opened the door," any error in precluding the PBT results at that point was harmless beyond a reasonable doubt. *See Commonwealth v. Koch*, 39 A.3d 996, 1003 (Pa.Super. 2011). The jury heard significant testimony that Gross was under the influence at the time of the crime, in addition to Detective Moore's testimony on the subject. The trial court did not abuse its discretion.

Judgment of sentence affirmed.

Judge Dubow joins the opinion.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2020

- 14 -