J-S18030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KENNETH LEE BROWN | : | |
| | : | |
| Appellant | : | No. 1296 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 11, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002864-2018

BEFORE:    PANELLA, P.J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED AUGUST 20, 2021**

Kenneth Lee Brown (Appellant) appeals from the judgment of sentence entered in the Chester County Court of Common Pleas following his jury convictions of aggravated assault and endangering the welfare of a child[1] (EWOC).  Appellant claims the trial court abused its discretion in: (1) allowing evidence of a prior incident, which resulted in the dismissal of criminal charges; and (2) precluding evidence that, for the same prior incident, the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(8), 4304(a)(1).

Children, Youth, and Family (CYF) agency determined that an allegation of abuse was unfounded.[2] We affirm.

> The trial court recounted the facts of the incident as follows:
>
> Appellant had a child, C.B., with Jennifer Traband.  On July 10, 2018, when the child was 17 months old, he became sick and was taken to the hospital. . . .   On July 11, 2018, the child was left alone in his hospital room with [A]ppellant.  When Ms. Traband returned to the room, she found the child crying in his crib with a bite mark on his cheek.  Appellant was in the room but was not attending to the child.  When asked what happened, [A]ppellant stated that the child swung his head and his cheek came into contact with [A]ppellant's mouth, which left a mark on the child's face.  The mark was examined and found to be a human bite mark with clear dentition patterns.  Appellant's explanation was deemed to be inconsistent with the bite mark left on the child.  Based on the foregoing, [A]ppellant was charged with Aggravated Assault and Endangering the Welfare of Children.

Trial Ct. Op., 12/30/20, at 1.

The Commonwealth filed a pre-trial motion in limine to admit evidence of a prior incident from April of 2017.  In April 2017, when the child was two months old, he was taken to the hospital for a mark on his shoulder, which was determined to be a human bite mark caused by Appellant.  Trial Ct. Op. at 2. When asked about this incident, Appellant gave inconsistent statements, first stating that he accidentally bumped the child's shoulder on the crib, later stating he hit the child's shoulder on the television stand.  *Id.*  Appellant then

---

[2] We note that Appellant raised six issues in his Pa.R.A.P. 1925(b) statement; however, he does not raise three of these six issues in his appellate brief. Appellant also combined the first two issues in his Rule 1925(b) statement to form his first issue in his brief.

admitted he sometimes "nibbles" on the child, and the injury was caused by Appellant "accidentally clamping down" on the child. *Id.* The Commonwealth argued this evidence was admissible to show absence of mistake, or lack of accident. *See* Pa.R.E. 404(b)(2).

On February 25, 2019, the trial court entered an order denying the Commonwealth's motion. Trial Ct. Op. at 3. The Commonwealth filed a motion for reconsideration. On July 8, 2019, following argument, the court granted relief and allowed this evidence pertaining to the April 2017 incident. *Id.* The case proceeded to a jury trial commencing on November 18, 2019.

The Commonwealth presented as an expert witness Philip Scribano, D.O., the Section Chief for the Safe Place and the Center for Child Protection and Health at the Children's Hospital of Philadelphia (CHOP).[3] He testified that he was working in one of the "Care Clinics" in July of 2018, where he saw C.B. as a patient. N.T., 11/19/19, at 184. Dr. Scribano stated his opinion as to the nature of the injury on C.B.'s cheek:

> The injury when I saw it was faded, but it still had a very characteristic rounded bruise on the cheek, and in comparison or in conjunction . . . with the prior images taken a couple days prior, the findings were consistent with my examination and corroborating with those images consistent with a human bite mark.

---

[3] This organization is an "umbrella organization" for the child abuse services and support services at CHOP. *See* N.T., 11/19/19, at 177.

- 3 -

*Id.* at 190. Dr. Scribano stated that a human bite, by definition, is characterized as "a non-accidental or inflicted injury." *Id.* at 194. He further stated that, in his expert opinion, Appellant's explanation for the child's injury was not consistent with the injury on child's face. *Id.* at 195.

Annamarie Koller, D.O., a pediatric hospitalist, testified that on July 11, 2018, she treated C.B. at the Chester County Hospital. N.T., 11/19/19, at 247-49. Dr. Koller documented the injury on C.B.'s face as follows: "[T]here were two distinct areas of bruising on the child's face. The upper bruise is a semicircular shape with an irregularity noted in the bruising and a dentition pattern." *Id.* at 256. Dr. Koller asked C.B.'s parents what happened, and testified she believed Appellant replied "he was playing with his son and his son fell into his face." *Id.* at 257. Dr. Koller was concerned that this explanation was inconsistent with the injury, and took photographs of the bruising on the child's face. *Id.* Being a mandated reporter, she made a report to CYF and consulted with Dr. Scribano, who was with the child abuse team. *Id.* at 261.

Jennifer Traband, mother of Appellant's child, testified that, on the day of the incident, she handed C.B. to Appellant before leaving the hospital room, and upon returning, could "hear [the child] crying from . . . all the way at the very end of the hallway." N.T., 11/18/19, at 79-80. A few minutes later, she noticed marks on the child's face, but did not ask Appellant about these marks, as she believed it was a rash spreading. *Id.* at 81. Later, Ms. Traband noticed

the mark again and "thought it was a bite mark," and was present the next morning when Appellant explained to the doctor how the injury occurred. *Id.* at 82-83, 85-86. Subsequently, Ms. Traband gave an interview at the West Goshen Police Department. *Id.* at 109.

The Commonwealth also introduced, through Traband's direct testimony, evidence about the prior April 2017 incident. Before Traband testified about it, the trial court instructed the jury that the evidence was for the "very limited purpose . . . of intending to show a possible absence of mistake or intent on [Appellant's] part regarding the incident." N.T., 11/18/19, at 93. The court further instructed the jury could not consider the evidence "in any [other] way," including as to whether Appellant is a person of bad character or had criminal intent. *Id.* Finally, the court advised the jury that Appellant "wasn't convicted [for this] other incident." *Id.* at 93-94.

Traband testified that in April of 2017, she left the child, then two months old, alone with Appellant. N.T., 11/18/19, at 94-95. Upon hearing the child crying, she went upstairs, and Appellant told Traband, "I think I might have hurt him." *Id.* at 96. Appellant told Traband that he had gotten up quickly from the "glider" chair and "banged" the child's shoulder on the corner of the crib. *Id.* at 96-97. Traband called the pediatrician for an appointment, concerned because she had "overheard a different story being told as to what had happened." *Id.* at 102. Traband then took the child to CHOP Urgent Care, and the child as admitted to the hospital. *Id.* at 104. The

next day, Appellant admitted to Traband that the child did not hit his arm on the crib, rather, Appellant "was playing with [C.B.] and biting on a knot in his bib, and didn't realize that he was biting on his shoulder." *Id.* at 105. Appellant objected, arguing that "[f]or something that's a sideline [sic], we're spending too much time on this." N.T., 11/18/19, at 105. The Commonwealth then concluded this line of questioning, but presented a photograph of the child's shoulder injury. *Id.* at 106-07.

On direct examination, Appellant conceded that he was charged with criminal offenses emanating from the April 2017 incident, but testified that these charges were dismissed upon a habeas corpus petition. N.T., 11/19/19, at 333. Appellant further stated that a Protection From Abuse (PFA) petition filed against him, as a result of the April 2017 incident, "was dismissed on the same day." *Id.* at 334. In describing the April 2017 incident, Appellant stated he was playing with his son and accidentally pinched his shoulder with his teeth, while "nibbling on him playing num-nums." *Id.* Appellant stated that he did not intentionally harm his son. *Id.*

Appellant sought to introduce evidence that with respect to the April 2017 incident, CYF "made an unfounded determination" in regard to an allegation of abuse. N.T., 11/18/19, at 4. The Commonwealth explained that CYF had initially made an indicated report of child abuse, from which Appellant took an administrative appeal, "and the indication was overturned." *Id.* at 8. The court excluded the CYF findings, reasoning CYF's decision could have been

based on "a variety of reasons," *id.*, and furthermore, the jury could be confused because "the standard of proof for the office of CYF is signficiantly different from the standard of proof in a criminal trial." Trial Ct. Op. at 7, *citing* **Commonwealth v. Stubbs**, 3807 EDA 2016 (unpub. memo.) (Pa. Super. 2017).

With regard to the incident in this case, Appellant testified that he was alone in the room with C.B. for 20 to 25 minutes, during which time his son became irritable and fussy. N.T., 11/19/19, at 350. Appellant testified that he picked up C.B. and "out of nowhere, he just (indicating) right in the mouth with his left cheek." **Id.** Appellant further testified that he believes Ms. Traband does not want him in his son's life, and he has not seen "a single photo of [his] son in the last 14 months." **Id.** at 360.

In the final instructions to the jury, the trial court addressed the April 2017 incident: "[Appellant is] not on trial for that. This evidence was brought before you for a limited purpose[,] of tending to show absence or mistake or accident or incident." N.T., 11/20/19, at 498.

On November 20, 2019, following this three-day trial, the jury found Appellant guilty of one count each of aggravated assault and EWOC. On June 11, 2020, the trial court sentenced Appellant to two days to 23 months' imprisonment, to be followed by 3 years' probation. Appellant did not file any post-sentence motions.

Appellant filed timely a notice of appeal on June 29, 2020, and subsequently complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

On appeal, Appellant raises the following issues for our review:

1. Did the trial court abuse it discretion when it allowed evidence of a prior, unrelated incident involving [Appellant] that was both irrelevant and overly prejudicial?

2. Did the trial court abuse its discretion when it precluded the defense from presenting evidence that [Appellant] was exonerated by CYF of the above stated incident?

Appellant's Brief at 2.

First, Appellant claims the trial court abused its discretion in allowing evidence regarding the incident from April 2017. Appellant argues that the evidence was irrelevant to the instant case, as "the two incidents . . . were not sufficiently similar such that the April 2017 incident tended to prove that an accident did not occur during the July 2018 incident." Appellant's Brief at 6. Appellant also argues that this evidence is irrelevant, considering "the April 2017 incident involved [Appellant's] actions, while the July 2018 incident involved the inadvertent action of the child." *Id.* Appellant maintains that evidence of this April 2017 incident served no purpose other than "to impugn [his] character." *Id.* at 7. Further, Appellant notes the "staggering" amount of time spent at trial litigating this April 2017 incident and that "there can be no question that the jury assumed [Appellant's] guilt based on the April 2017 incident." *Id.* at 8-9. No relief is due.

The admissibility of evidence is "a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion." **Commonwealth v. Clemons**, 200 A.3d 441, 447 (Pa. 2019). An abuse of discretion is "more than a mere error of judgement; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgement exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." **Id.** An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. **Id.** However, even if the evidence is relevant, the court may nonetheless exclude it if its probative value is outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." **Commonwealth v. Gross**, 241 A.3d 413, 419 (Pa. Super. 2020), *citing* Pa.R.E. 403.

Evidence of prior bad acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Such evidence is only admissible in a criminal case "if the probative value of the evidence outweighs its potential for unfair prejudice." **Id.** In order for evidence of prior acts to be admissible as

"evidence of motive", the acts "must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Washington*, 236 A.3d 1133 (Pa. Super. 2020), *appeal denied,* 238 A.3d 1171 (Pa. 2020), *citing Commonwealth v. Ferguson*, 107 A.3d 206, 211 (Pa. Super. 2015).

Here, in allowing evidence of the April 2017 incident, the trial court reasoned "the evidence is not being admitted to prove [Appellant's] character in order to show conformity therewith. It is being admitted in order to show intent, absence of mistake, and/or lack of accident as permitted in Pa.R.[E.] 404(b)(2)." Order, 7/8/19, at 2 n.1. The trial court also noted that it instructed the jury, before the evidence was even introduced, on this limited purpose:

> [T]his evidence is before you . . . for the purpose of intending to show a possible absence of mistake or intent on [Appellant's] part regarding this incident. Now, you have to view — there will be two very different takes on the entire thing. The Commonwealth's take will be it was intentional. Defense take that it was accidental, the prior incident a year before. . . .
>
> This evidence must not be considered by you in any way, other than the purpose that I just mentioned. . . .

Trial Ct. Op. at 3, *quoting* N.T., 11/18/19, at 93.

The court further instructed the jury on this evidence in its final jury instructions. N.T., 11/20/19, at 498 ("He's not on trial for [the April 2017 incident. This evidence was brought before you for a limited purpose . . . of tending to show absence of mistake[,] accident or intent."). The trial court reasons that this "limiting instruction properly advised the jury that

- 10 -

[A]ppellant was not on trial for any actions concerning the April 2017 incident" and the "cautionary instruction clearly informed the jury of the limited purpose for allowing this testimony to be introduced," thus curing any potential harm. Trial Ct. Op. at 4.

We agree that the trial court did not abuse its discretion in allowing this evidence of the April 2017 incident. In accordance with Pa.R.E. 404, the Commonwealth presented evidence of the April 2017 incident to demonstrate Appellant's "absence of mistake, or lack of accident." **See** Pa.R.E. 404(b)(2). The trial court properly instructed the jury that this evidence was not to prove "a person's character in order to show that on a particular occasion the person acted in accordance with the character." **See** Pa.R.E. 404(b)(1); N.T., 11/18/19, at 93. The trial court further instructed the jury, "You must not regard this evidence as showing [Appellant] is a person of bad character, or has criminal intent, which you may be inclined to infer guilt. **Id.** Thus, Appellant's claim that the jury "assumed [his] guilt based on the April 2017 incident" is meritless. **See** Appellant's Brief at 8-9. As the evidence of the April 2017 incident was introduced to demonstrate a lack of accident in the present case, its probative value outweighs the potential for unfair prejudice. **See** Pa.R.E. 404(b)(2). Appellant's claim is thus without merit.

In his second issue, Appellant argues that the trial court erred in precluding information regarding the CYF investigation, and thus denying the jury a "full picture" of the April 2017 incident. Appellant's Brief at 10.

Appellant claims the trial court's reasoning, that the differing standards of proof for the investigation would confuse the jury, "rings hollow," as the jury was allowed to learn that the PFA sought against him was denied. *Id.* at 10-11. No relief is due.

The trial court acknowledged the ***Stubbs*** decision, an unpublished Superior Court memorandum, did not have precedential value. ***See*** Trial Ct. Op. at 6. Nevertheless, we find no abuse of discretion in the court's reasoning that the jury would be confused by the differing standards applicable to: (1) an indicated report of child abuse under the Child Protective Services Law;[4] and (2) a finding of guilt on a criminal charge under the Crimes Code. ***Compare*** 23 Pa.C.S. § 6303 ("indicated report" of child abuse is based on "substantial evidence of the alleged abuse by a perpetrator"), ***with*** ***Commonwealth v. James***, 46 A.3d 776, 779 (Pa. Super. 2012) (*en banc*) (Commonwealth has burden of proving every element of a criminal offense beyond a reasonable doubt). Furthermore, the court reasoned the evidence would draw the jury's attention away from considering the evidence related to the instant charges against Appellant. Trial Ct. Op. at 7. Meanwhile, as the trial court pointed out, Appellant clearly testified before the jury that the criminal charges, as well as the PFA petition, for the 2017 incident, were dismissed. ***See*** Trial Ct. Op. at 6; N.T., 11/19/19, at 333-334. Under our

_____

[4] 23 Pa.C.S. §§ 6301-6387.

- 12 -

standard of review, we do not disturb the trial court's evidentiary ruling. ***See***

***Clemons***, 200 A.3d at 447.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2021