J-S06017-24

2024 PA Super 132

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL YANOVITSKY | : | |
| | : | |
| Appellant | : | No. 142 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 5, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002802-2021

BEFORE:  DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

OPINION BY McLAUGHLIN, J.:                    **FILED JUNE 25, 2024**

Michael Yanovitsky appeals from the judgment of sentence imposed on his convictions for indecent assault without consent and institutional sexual assault.[1] Yanovitsky challenges his conviction for institutional sexual assault and the trial court's preclusion of an expert witness. We affirm Yanovitsky's judgment of sentence for indecent assault without consent, reverse his conviction for institutional sexual assault, and remand for resentencing.

The instant charges stemmed from an incident that occurred in February 2020 at Temple University. At that time, Yanovitsky was a music professor at the university and J.G. was his student. The case proceeded by way of a non-jury trial. The court accurately summarized the testimony as follows:

> [J.G.] testified that on the evening of February 5, 2020 at 7:30pm [*sic*] she had a chamber music class with [Yanovitsky], at Rock Hall on Temple University's main campus in Philadelphia, PA. (N.T. Trial, 8/16/22, at 30).

_____

[1] 18 Pa.C.S.A. §§ 3126(a)(1) and 3124.2(a.2)(1), respectively.

[J.G., age 20 at the time,] testified that when she arrived at the classroom the students present were at the end of a studio rehearsal but left the classroom shortly after her arrival. *Id.* at 34. [J.G.]'s testimony is that [she], her chamber ensemble partner and [Yanovitsky] remained in the classroom to perform a repertoire piece. *Id.* at 35. Shortly after [J.G.] and her chamber ensemble partner performed, [Yanovitsky] dismissed [J.G.]'s partner but instructed [J.G.] to stay behind and practice more due to a previous incomplete grade. *Id.*

While alone in the classroom with the door closed, [Yanovitsky] touched [J.G.]'s hair, kissed her forehead and told her he was happy that she was there. *Id.* at 37. [J.G.] further testified that [Yanovitsky] told her to play the piece that she was working on in his class. *Id.* at 38. [J.G.] then testified that she continued to play the piano through the section she was working on and when she finished, [Yanovitsky] stood her up and embraced her with one hand wrapped around her back and the other hand under the collar of her shirt as he kissed the top of her forehead. *Id.* Thereafter, [J.G.] testified that [Yanovitsky] sat her back down at the piano and instructed her to continue playing. *Id.* at 39. [J.G.] testified that [Yanovitsky] then stopped her from playing the piano and stood her back up while embracing her and pushing his erect penis against her thigh. *Id.* at 39-40. [J.G.] then testified that [Yanovitsky] with his hands wrapped around her chest touching her breast, then pulled her down onto his lap as he was sitting on the piano bench. *Id.* at 40.

[J.G.]'s testimony is that [Yanovitsky] then began to turn her toward him as he kissed different areas of her face while placing his hands under her shirt onto the bare skin of her back. *Id.* at 41-42. [J.G.] testified that as [Yanovitsky] was engaging in this conduct, he made comments about her appearance and how he thought she was special. *Id.* at 42. [J.G.] then testified that [Yanovitsky] was stimulating his penis as he moved her on his lap. *Id.* [J.G.] then testified that [Yanovitsky] caressed the sides of her breast, stood her back up and began to dance with her, then again instructed her to sit back down at the piano and play. *Id.* at 43. Next, [J.G.] testified that [Yanovitsky] stopped her from playing again and at this time he was sitting at a piano next to her where he proceeded to lift her feet from the floor, put them

onto his lap, remove her shoes and socks and then using her feet to stimulate his penis. *Id.* at 44-45. This concluded [J.G.]'s testimony.

Next, Commonwealth's witness Jessica Milner (hereinafter "Milner") testified that she had first met [J.G.] while attending Temple University and that the two had lived together during her senior year of school as roommates from August 2019 through Spring of 2020. *Id.* at 114-115. . . . On January 29, 2020, [J.G.] confided in Milner about her professor, [Yanovitsky], making her uncomfortable. *Id.* at 117-118. Milner testified that at that time, [J.G.] was not sure whether to report the conduct or not. *Id.*

Milner testified that on February 5, 2020 she was aware that [J.G.] had a piano rehearsal with the same professor who was making her uncomfortable. *Id.* at 119. She reached out to [J.G.] via text message to make sure she was feeling okay. *Id.* [J.G.] had messaged Milner that she was alone with the professor and another female student. *Id.* The other female student had left and now she was alone with the professor. *Id.* Milner offered to come to the classroom with [J.G.], but [J.G.] had said she planned to be leaving soon and would come to her. *Id.* Milner then received a phone call from [J.G.] saying that she could not wait to report anymore. *Id.* at 120. Milner sent her resources and instructed [J.G.] to put all her clothes in a brown paper bag. *Id.* The two of them . . . had a conversation about what had happened later that same night. *Id.* at 121-122.

[J.G.] told Milner that [Yanovitsky] had removed her shoes and placed her feet on his penis. *Id.* at 122-123. [Yanovitsky] also made [J.G.] dance with him against his penis and held her close. *Id.* Milner then testified that [J.G.] had gone to the police to report the incident on February 8, 2020 and also made a Title IX report. Milner also gave a statement about what happened to the Title I[X] investigators. *Id.* at 123-124. This concluded Milner's testimony.

The Commonwealth and the Defense brought forth three stipulations. The first stipulation is that, if called to testify, Christian Vellani would testify that he is employed as a forensic scientist with the Philadelphia Trace Laboratory and

- 3 -

is an expert in the area of trace analysis and forensic science. *Id.* 131-133. His reports about DNA swabs taken from the clothing of [J.G.] were memorialized as Commonwealth's Exhibit 5. *Id.* at 133. The second stipulation is that, if called to testify, Rui Sen Kubiak would testify that she is a forensic scientist employed with the Philadelphia DNA laboratory and is an expert in the field of forensic DNA analysis. *Id.* at 134-138. Rui Sen Kubiak's findings were memorialized as Commonwealth['s] Exhibit 8. *Id.* at 138-139. [Yanovitsky]'s DNA was found consistent with at least two of the seven samples taken. *Id.* The third and final stipulation is that, if called to testify, twenty-two witnesses that were friends, students, and coworkers would testify to [Yanovitsky]'s reputation in the community for law-abidingness and peacefulness. *Id.* at 143-147.

Trial Court Opinion, filed June 13, 2023, at 2-5.

Prior to trial, the Commonwealth filed a motion to preclude Yanovitsky's proffered expert from testifying. Yanovitsky had intended to present the testimony of a piano professor from Tulane University, Faina Lushtak. Yanovitsky maintained that Lushtak was qualified as an expert in piano performances. Lushtak had viewed a video of J.G. playing piano, and in her opinion, J.G. would not have received a passing grade. The court ruled that the evidence was not relevant and precluded Yanovitsky from presenting it at trial.

After trial, the court convicted Yanovitsky of indecent assault without consent and institutional sexual assault. He was sentenced to six to 12 months' confinement in county prison with immediate parole to house arrest. This appeal followed.

Yanovitsky raises the following issues:

I. Should not [Yanovitsky's] conviction and sentence for institutional sexual assault be vacated where the relevant language of the statute, the context in which it is used, and the rules of statutory construction, compel the conclusion that the legislature did not intend for the law to apply to students and teachers at a college or university?

II. Did not the lower court abuse its discretion in excluding evidence demonstrating a motive on the part of the complainant to falsely implicate [Yanovitsky] where the proposed expert witness would have opined that a video depicting the complainant's piano performance would have resulted in a failing grade?

Yanovitsky's Br. at 8.

Yanovitsky first argues that his conviction for institutional sexual assault should be vacated because the statute was not intended to apply to teachers and students at colleges or universities. *Id.* at 13. He maintains that he was not an "employee" of a "school" as defined in the institutional sexual assault statute. *Id.* at 14. Yanovitsky argues that the focus of the statute is to protect elementary and secondary students from employees and independent contractors who are likely to have direct contact with them. *Id.* at 15. According to Yanovitsky, "[h]ad the legislature intended to include college or university instructors such as [him] in its list of 'employees,' it is reasonable to assume it would have used words commonly associated with higher education, such as 'professor' or 'college' or 'university.'" *Id.* at 16. The Commonwealth agrees with Yanovitsky that the statute does not apply to colleges and universities. *See* Commonwealth's Br. at 7. It therefore concedes

that Yanovitsky's conviction for institutional sexual assault should be vacated. *Id.* at 17. We agree.

Statutory interpretation is a question of law. ***Commonwealth v. Gamby***, 283 A.3d 298, 304 (Pa. 2022). Our scope of review is plenary, and our standard of review is *de novo*. ***Id.***

When engaging in statutory construction, we follow the instructions of the Statutory Construction Act. ***See*** 1 Pa.C.S.A. §§ 1501-1991; ***Gamby***, 283 A.3d at 306.

> The Act directs us that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). Thus, "when the terms of a statute are clear and unambiguous, they will be given effect consistent with their plain and common meaning." ***Gamby***, 283 A.3d at 306 (citing 1 Pa.C.S.A. § 1921(b)); ***Commonwealth v. Kelley***, 569 Pa. 179, 801 A.2d 551, 554 (2002).
>
> If, on the other hand, the statutory language is not explicit, we follow the instructions of the Statutory Construction Act to ascertain the General Assembly's intent. We do so by considering the factors listed in Section 1921(c), which include such matters as "[t]he object to be attained" and "[t]he consequences of a particular interpretation." ***See*** 1 Pa.C.S.A. § 1921(c). Similarly, the Crimes Code instructs that its provisions "shall be construed according to the fair import of their terms." 18 Pa.C.S.A. § 105. Only "when the language is susceptible of differing constructions" shall a statute "be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." ***Id.***
>
> To discern the meaning of statutory language, or whether any ambiguity exists, we construe the statutory words and phrases "according to the rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903. We may consult dictionary definitions. ***Gamby***, 283 A.3d at

307. We must also view the words in context. *Id.* at 306 (citing 1 Pa.C.S.A. § 1903); 308 (citing *In re J.W.B.*, 659 Pa. 561, 232 A.3d 689, 699 (2020)).

*Commonwealth v. Derr*, 293 A.3d 671, 678-79 (Pa.Super. 2023).

The crime of institutional sexual assault provides, in relevant part:

[A] person who is a volunteer or **an employee of a school or any other person who has direct contact with a student at a school** commits a felony of the third degree when he engages in sexual intercourse, deviate sexual intercourse or indecent contact with a student of the school.

18 Pa.C.S.A. § 3124.2(a.2)(1) (emphasis added).

An "employee" under the statute includes:

(I) A teacher, a supervisor, a supervising principal, a principal, an assistant principal, a vice principal, a director of vocational education, a dental hygienist, a visiting teacher, a home and school visitor, a school counselor, a child nutrition program specialist, a school librarian, a school secretary the selection of whom is on the basis of merit as determined by eligibility lists, a school nurse, a substitute teacher, a janitor, a cafeteria worker, a bus driver, a teacher aide and any other employee who has direct contact with school students.

(II) An independent contractor who has a contract with a school for the purpose of performing a service for the school, a coach, an athletic trainer, a coach hired as an independent contractor by the Pennsylvania Interscholastic Athletic Association or an athletic trainer hired as an independent contractor by the Pennsylvania Interscholastic Athletic Association.

*Id.* at 3124.2(a.2)(2)(ii)(A).

"School" is defined under the statute as "[a] public or private school, intermediate unit or area vocational-technical school." *Id.* at § 3124.2(a.2)(2)(iii).

We do not think these definitions as applied here are "clear and free from all ambiguity." A "public or private school" can include a university. Merriam-Webster defines a "school" as including "an organization that provides instruction such as a: an institution for the teaching of children b: college, university[.]" Merriam-Webster, School, https://www.merriam-webster.com/dictionary/school (last visited May 30, 2024) (punctuation and capitalization regularized). On the other hand, Black's Law Dictionary provides a somewhat more limited definition: "[a]n institution of learning and education, esp. for children." SCHOOL, Black's Law Dictionary (11th ed. 2019). Black's Law Dictionary further states that when used in a statute, the word "school" does not ordinarily refer to a university:

> Although the word "school" in its broad sense includes all schools or institutions, whether of high or low degree, the word "school" frequently has been defined in constitutions and statutes as referring only to the public common schools generally established throughout the United States. . . **When used in a statute or other contract, "school" usually does not include universities, business colleges, or other institutions of higher education unless the intent to include such institutions is clearly indicated.**

*Id.* (quoting 68 Am. Jur. 2d Schools § 1, at 355 (1993)) (emphasis added).

We turn to the tools of statutory construction and conclude that "school" does not include a university. There are no references to colleges, universities, higher education, or post-secondary schools in the statute. Other statutes in the Crimes Code have included those terms when referring to "schools." *See, e.g.,* 18 Pa.C.S.A. § 2801 (antihazing statute separately defining "institution

- 8 -

of higher education" as "[a]n institution located within this Commonwealth authorized to grant an associate or higher academic degree," and "secondary school" as "[a] public or private school within this Commonwealth that provides instruction in grades 7 through 12 or a combination of grades 7 through 12"); 18 Pa.C.S.A. § 6314(b)(3) (setting additional penalties for trafficking drugs "within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university"); 18 Pa.C.S.A. § 6319 (defining "drug-free school zone" as "the area within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university").

Here, the legislature chose not to include any higher education terms in the institutional sexual assault statute. "[A]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says[,] one must also listen attentively to what it does not say." **Commonwealth v. Johnson**, 26 A.3d 1078, 1090 (Pa. 2011) (citation omitted). Courts shall not "add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." **Id.** (citation omitted).

The history of the institutional sexual assault statute offers further support that "school" was not meant to apply to colleges and universities. In 2011, the legislature amended the statute to include subsection 3124.2(a.2) pertaining to "schools." The Governor's message accompanying the amendments was entitled, "Governor Corbett Signs Bill to Toughen Sex Offender Law, Better Protect Children from Predators." Pa. Gov. Mess.,

12/20/2011. Relevant here, the message explained, "The measure [] broadens Pennsylvania's law to make sexual contact with students and children carry a criminal charge of institutional sexual assault for volunteers, employees and other adults in a school or center for children." *Id.* As the Governor's message points out, the addition suggests the purpose was to protect children.

Further, in ascertaining the intention of the General Assembly in the enactment of a statute, we may presume that the General Assembly did "not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1); *see also Holland v. Marcy*, 883 A.2d 449, 456 (Pa. 2005) (stating "we should avoid construing a statute in such a way as would lead to an absurd result").

Here, the statute provides that consent is not a defense to institutional sexual assault at a school. *See* 18 Pa.C.S.A. § 3124.2(a.5). If "school" included colleges and universities, a college professor would commit a felony in the third degree if he or she engaged in consensual sexual intercourse with an adult student. We believe that the legislature did not intend this absurd result. For the foregoing reasons, we vacate Yanovitsky's conviction for institutional sexual assault.

Yanovitsky next argues that the court abused its discretion when it granted the Commonwealth's pretrial motion to preclude his expert witness from testifying at trial. Yanovitsky maintains that his expert would have testified that J.G.'s piano performance would not have earned her a passing

grade. *Id.* at 23. He asserts that this evidence was relevant to prove that J.G. had a motive to fabricate the charges of sexual assault against him because J.G. "likely realized she would not graduate so long as [Yanovitsky] persisted in his view that she was not ready to pass her final piano performance." *Id.* Yanovitsky maintains that he had a constitutional right to present a defense and urges this Court to grant him a new trial. *Id.* at 24.

The admission of expert testimony is within the discretion of the trial court and should not be disturbed on appeal unless the trial court abuses its discretion. *Buttaccio v. Am. Premier Underwriters, Inc.*, 175 A.3d 311, 315 (Pa.Super. 2017). "An abuse of discretion exists where there is an overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Gross*, 241 A.3d 413, 418 (Pa.Super. 2020) (internal quotation marks and citation omitted).

Evidence is admissible if it is relevant. Pa.R.E. 402. "Evidence that is not relevant is not admissible." *Id.*

Here, the court determined the proffered testimony was not relevant. The court did not abuse its discretion. Lushtak viewed a practice performance by J.G. that was filmed one week before the final. She opined that at Tulane University, J.G.'s performance would not be considered satisfactory and that she would not have passed her. However, Lushtak had no relationship to Temple University or any awareness as to Temple's unique grading policies and procedures. Yanovitsky failed to establish how a professor's opinion from

an unrelated university was relevant to show that J.G. believed she was at risk of failing such that she had motive to fabricate a sexual assault. The court did not err in precluding Lushtak's testimony.

Judgment of sentence for indecent assault without consent affirmed. Judgment of sentence for institutional sexual assault reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/25/2024