J-S11022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KYSHAN BRINKLEY | : | |
| | : | |
| Appellant | : | No. 1988 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 13, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006413-2019

BEFORE:   BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 16, 2024**

Kyshan Brinkley appeals from the judgment of sentence entered after a jury found him guilty of first-degree murder and conspiracy.[1] Brinkley challenges evidentiary rulings, the denial of a motion to suppress, and the sufficiency and weight of the evidence. We affirm.

The trial court set forth the facts from the trial, which we adopt. Trial Court Opinion, filed Sept. 21, 2023, at 3-35. The trial court aptly summarized the factual history as follows:

> Brinkley's convictions arose out of a conspiracy with co-defendants, Derrick Goins and Jacquan Lee, to murder Keith Robinson, a rival drug dealer to the home-grown Pottstown gang, Bud Gang Bitch ("BGB"). On March 30, 2019, at about 10:53 p.m., the victim's vehicle was sprayed with bullets, while the victim was parked at the corner of York and Walnut

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a) and 903.

Streets, Pottstown. Two of the ten bullets hit the victim and killed him.

Specifically[,] as to Brinkley, earlier in the evening of March 30, 2019, Brinkley was with his co-defendants Lee and Goins at a social gathering at Chestnut and Evans Streets. Several witnesses identified Brinkley as being present with them at that location. They left that location. Lee and Goins were specifically observed to have left in a black minivan together, driven by Lee.

Brinkley, along with Lee and Goins, arrived together in the black minivan to an apartment complex at 206 Manatawny Street a short time later. In between the time the co-defendants left the gathering and arrived at Manatawny Street, the victim was murdered. During the time of the murder, the black minivan was captured twice on surveillance in the vicinity of the victim's car. After leaving 206 Manatawny Street in the black minivan, Brinkley and his co-defendants traveled to a gas station, and then onto a club in Philadelphia.

Additionally, Brinkley's cell phone records from the night of the murder show that the movements of his cell phone were consistent with those of Goins' cell phone; both cell phone records show that the cell phones were in the area of the murder at the relevant time, traveled back to 206 Manatawny Street afterwards, and after a brief amount of time the cell phones traveled to a gas station, and then to the club in Philadelphia. Surveillance footage corroborated that a black van was at the murder scene, at 206 Manatawny Street, and at a nearby gas station at times that match up to the cell phone records.

Further evidence showed that Brinkley was a member of the BGB gang, through rap videos, rap lyrics, social media accounts, and a gang expert; and that the gang was involved in drug trafficking.

Finally, Brinkley had confided in another inmate[, Elijah Williams,] housed at Montgomery County Correctional Facility after his arrest about the details and his involvement in the murder.

*Id.* at 1-3.

- 2 -

The jury convicted Brinkley of first-degree murder and conspiracy. It sentenced him to life imprisonment. Brinkley filed a post-sentence motion, which the trial court denied. He filed a notice of appeal.[2]

Brinkley raises the following issues:

> (a.) Did the Trial Court err in denying [Brinkley's] Pretrial Motion in Limine to preclude the admission of evidence regarding his alleged involvement in and/or affiliation with a Gang, known as "BGB" or "Bud Gang Bitches," during the Commonwealth's case-in-chief?
>
> (b.) Did the Trial Court err in permitting the Commonwealth to introduce the testimony of Detective Echevarria, as an Expert Witness in Gang Structure and Organization, specifically related to "BGB" or "Bud Gang Bitches" during the Commonwealth's case-in-chief?
>
> (c.) Did the Trial Court err in denying [Brinkley's] Pretrial Motion in Limine to preclude the admission of evidence regarding his participation in Rap Music Video(s) attributed to "BGB" or "Bud Gang Bitches" during the Commonwealth's case-in-chief?
>
> (d.) Did the Trial Court err in permitting the Commonwealth to introduce the lyrics to Rap Songs attributed to "BGB" or "Bud Gang Bitches," during the Commonwealth's case-in-chief?
>
> (e.) Did the Trial Court err in denying [Brinkley's] Pretrial Motion to Suppress his testimony taken before the Montgomery County Investigating Grand Jury on May 22nd and July 10th of 2019?
>
> (f.) Did the Trial Court err in denying [Brinkley's] Pretrial Motion for the Release of Mental Health Records for the Commonwealth's Witness, Elijah Williams?

---

[2] This Court dismissed Brinkley's original appeal on May 1, 2023 for failure to comply with Pennsylvania Rule of Appellate Procedure 2135. Order, 549 EDA 2022, filed May 1, 2023. Brinkley filed a petition to reinstate his rights *nunc pro tunc*, which the trial court granted. He filed a timely notice of appeal.

(g.) Did the Trial Court err in precluding [Brinkley] from questioning the Commonwealth's Witness, Elijah Williams, regarding his court ordered Competency Evaluation, during cross examination?

(h.) Did the Trial Court err in precluding [Brinkley] from calling a Defense Witness, Semaj Howard, to testify to the mental health diagnosis of the Commonwealth's Witness, Elijah Williams, of which he had personal knowledge?

(i.) Did the Trial Court err in permitting the Commonwealth to introduce evidence of [Brinkley's] Instagram conversations and postings, during the Commonwealth's case-in-chief, where the Commonwealth failed to provide reasonable notice of the same in advance of trial?

(j.) Did the Trial Court err in denying [Brinkley's] Post-Sentence Motion for a Judgment of Acquittal on the charges of murder in the First Degree and Criminal Conspiracy to commit Murder, for which the evidence introduced at trial was legally insufficient to support the jury's verdict?

(k.) Did the Trial Court err in denying [Brinkley's] Post-Sentence Motion for a New Trial, where the jury's verdict was against the weight of the evidence, which clearly established a reasonable doubt as to whether he had committed the crimes of Murder in the First Degree and Criminal Conspiracy to commit Murder?

Brinkley's Br. at 6-8. We will address Brinkley's claims out of order, for ease of discussion.

### A. Admission of Evidence

Brinkley's first through fifth and sixth through ninth issues challenge the admission of evidence. We review a trial court's decisions on the admissibility of evidence for an abuse of discretion. *Commonwealth v. Brown*, 212 A.3d 1076, 1086 (Pa.Super. 2019). "An abuse of discretion exists where there is an overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality,

as shown by the evidence of record." ***Commonwealth v. Gross***, 241 A.3d 413, 418 (Pa.Super. 2020) (internal quotation marks and citation omitted).

Brinkley first argues the trial court erred in denying his motion to preclude the admission of evidence regarding his alleged involvement in BGB. He maintains the minimal probative value of the evidence was outweighed by the prejudicial impact. Brinkley notes that the discovery materials included statements and testimony that attributed to BGB the sale of controlled substances, the possession of firearms, and the commission of robberies and assaults. Some individuals' statements included his or her belief that Brinkley was a member of BGB. Brinkley contends that the individuals' beliefs were based on hearsay and points out that he had never been arrested, prosecuted, or convicted for any offenses allegedly committed as a member of BGB. Brinkley further claims there was no evidence the shooting was the result of or related to gang affiliation or gang violence. He claims the evidence was inadmissible under Rule 404(b). He further asserts the Commonwealth failed to establish a nexus between BGB and Robinson, such that the jury could find his death was related to BGB activity. Brinkley attempts to distinguish the cases relied on by the Commonwealth, claiming that in those cases a fellow gang member testified about the defendant's role in the crime, such that the evidence was relevant to prove conspiracy and motive.

Evidence is admissible if relevant, unless otherwise provided by law. Pa.R.Evid. 402. A court may exclude relevant evidence where the probative value is outweighed by a danger of unfair prejudice. Pa.R.Evid. 403. Further,

- 5 -

Rule 404(b) prohibits evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character." Pa.R.Evid. 404(b)(l). However, prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.Evid. 404(b)(2). "In a criminal case, this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.* "Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.Evid. 403, comment (internal quotation marks omitted).

In ***Commonwealth v. Gwaltney***, 442 A.2d 236, 241 (Pa. 1982), the Pennsylvania Supreme Court held that the trial court properly admitted evidence of the defendant's gang affiliation. There, the evidence included that a Commonwealth witness was a member of a gang and the appellant belonged to that same gang; the deceased was a member of a rival gang; the Philadelphia area is divided into various gang "turfs"; the deceased had stated that the appellant's gang was responsible for his injuries; other witnesses were members of various gangs; and the deceased had stabbed a member of appellant's gang. *Id.* at 240-41. The Court found the evidence was relevant circumstantial evidence to establish a conspiracy and to prove motive, intent, plan, design, ill will, or malice. *Id.* at 241. It concluded that "[t]he evidence presented concerning the relationship between appellant's gang and the

deceased's gang, and the alleged stabbing of a member of appellant's gang by the deceased is certainly probative of appellant's possible motive." *Id.*

Similarly, in **Commonwealth v. Ramos**, 532 A.2d 22, 23-24 (Pa.Super. 1987), this Court found evidence of drug dealing admissible. There, witnesses testified that the victim sold drugs, and the Commonwealth presented evidence that the appellant shot the victim on the instruction of Hawk Pagan, who also was a drug dealer. The evidence also included testimony that the appellant and victim had had a physical confrontation, that Pagan and others had shot at the victim, and that Pagan had threatened the victim with death. This Court found the evidence of the appellant's drug dealing and the prior fighting and shooting incidents were relevant to establish his motive for the murder. *See id.* at 23. We pointed out that the criminal activities were "clearly connected to the appellant, the victim and the reason for the murder." *Id.* at 24.

Here, the trial court noted that the Commonwealth's theory of the case was that the co-defendants conspired to murder Robinson, who was a rival drug dealer, and that the evidence of gang affiliation was relevant to establish conspiracy and motive:

> [G]ang affiliation evidence was comprised of several components such as the rap videos, rap lyrics, social media accounts, which was all testified to, explained, and tied together by Lieutenant Echevarria's expert testimony. It also included the testimony of Detective Long, and questioning of Jamar Baird and Jarid Majors. In general, the evidence of gang affiliation was properly admitted and relevant to show association among the co-defendants to establish conspiracy and motive for the murder. Evidence of

> gang affiliation and gang ethos as testified to by Lieutenant Echevarria was relevant to show that these co-defendants had the motive, intent, and plan to conspire to murder. Therefore, this gang affiliation evidence was properly admitted at trial.

Tr. Ct. Op. at 44.

The trial court did not abuse its discretion in admitting the evidence of Brinkley's affiliation with BGB. The evidence went to his motive for shooting the victim, who was a rival drug dealer, was relevant to establish the conspiracy between Brinkley and his co-defendants, and was not unfairly prejudicial.

Brinkley next maintains the court erred in allowing Detective Echevarria to provide expert testimony as to BGB and in gang structure and organization. Brinkley claims Detective Echavarria did not possess personal knowledge and was not made aware of facts that would constitute a sufficient basis for the admission of expert testimony. Brinkley maintains that Detective Echevarria's expert report did not contain his personal knowledge or state that he had been made aware of any conflict between BGB and Robinson, any type of "hit" put out on Robinson, or that BGB wanted Robinson eliminated. He cites the cross examination of Detective Echevarria, claiming it proves he did not have personal knowledge that would form a proper basis for an expert opinion on the gang structure and organization of BGB, as Detective Echevarria agreed Montgomery County does not have a gang problem, many shootings were not related to gangs, he did not know how someone became a member of BGB and had not interviewed any BGB members, no officer had spent time

undercover within BGB, and he did not know who held a rank or gave orders with BGB.

Pennsylvania Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.Evid. 702. Further,

[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

***Id.*** at 703.[3]

The trial court did not abuse its discretion in admitting Lieutenant Echavarria's expert testimony. Lieutenant Echavarria's testimony was based

---

[3] At the hearing on the motions *in limine*, Brinkley argued that Lieutenant Echevarria's report did not mention that he "had actual knowledge of a conflict between the alleged members of BGB and Keith Robinson, the victim. There's no evidence that Detective Echevarria can point to in his report that indicates that Keith Robinson was the target of a hit that was put out by BGB. There's no evidence to support or that Detective Echevarria points to in his report that indicates that BGB wanted Keith Robinson eliminated, if you will, because he was a rival drug dealer." N.T., Nov. 29, 2021, at 23-24.

on facts of which he was aware. That he lacked knowledge of other facts does not equate to a lack of a factual basis of the opinions that he did express, including that BGB was a gang and that Brinkley was a member of that gang. The facts and data of which he was aware supported his opinion.

In his third and fourth issues, Brinkley maintains the court erred in granting the Commonwealth's motions to admit the lyrics to the rap songs attributed to BGB and evidence that Brinkley participated in rap music videos. He claims that evidence of Brinkley and his co-defendants lip syncing and dancing to words under the BGB moniker is not evidence of a conspiratorial relationship to kill Robinson. He claims the admission of the evidence was unfairly prejudicial. He notes that during Detective Echeverria's cross examination he admitted he did not know who wrote the rap songs and that appearing in a rap video does not mean you are in a gang or you will commit violent acts. Brinkley attempts to distinguish the cases relied on by the Commonwealth, maintaining the rap music videos and lyrics were irrelevant as they did not make specific reference to the killing of Robinson and were recorded prior to the shooting, there was no evidence Brinkley wrote the lyrics, and he did not present evidence of his good character.

The trial court concluded the lyrics were relevant to establish conspiracy and motive. It pointed out the lyrics and videos demonstrate gang affiliation and association through lyrics, tags, graffiti, and filming locations:

> The Commonwealth sought to introduce the rap videos and lyrics in order to establish conspiracy and motive. The Commonwealth argued that the rap videos demonstrate

- 10 -

gang activity and association, which went to the conspiracy to commit murder. (N.T., Pre-Trial Motions, 6/23/21, p. 12 - 13). More specifically, the Commonwealth stated that the rap videos are associated with the BGB, with numerous BGB tags and graffiti, and were filmed in locations significant to BGB, including 206 Mantawny Street. *Id.* at 16. The videos and lyrics contained references to always carrying firearms and specific references to not cooperating with police. *Id.* at 56. Finally, the Commonwealth suggested that Lieutenant Echevarria would testify that only close associates would appear in these sorts of videos. *Id.* at 43. As to motive, the rap videos and lyrics contained an emphasis on the importance of drug dealing and making money, with many drug dealing references as explained through Lieutenant Echevarria's interpretation of drug dealing jargon and drug references. *Id.* at 43. On December 20, 2021, an order was issued denying the motion in *limine* to exclude the rap videos and lyrics.

The rap videos and lyrics were properly admitted to show that there was an association among the co-defendants, i.e., that they belonged to a gang, BGB, and that as a gang there were a set of ethos, as testified to by gang expert Lieutenant Echevarria, which . . . gave rise to their collective conspiratorial motive, to murder the victim. In other words, the rap videos and lyrics were evidence of association and of BGB's drug dealing, which went to both the conspiracy and motive to kill the victim.

Tr. Ct. Op. at 45-46.

The trial court did not abuse its discretion in admitting the rap videos and lyrics. Rap lyrics that tend to show a conspiratorial agreement are relevant. ***Commonwealth v. Flamer***, 53 A.3d 82, 89 (Pa.Super. 2012) (finding rap lyrics relevant where they tended to prove a conspiratorial agreement). Further, as discussed above, the evidence of gang affiliation, which included the rap lyrics and videos, was admissible as evidence of conspiracy and motive.

In issues, six, seven, and eight, Brinkley challenges the trial court's rulings regarding his cross-examination of the inmate who testified that Brinkley told him details of the crime, Elijah Williams. Brinkley claims the court erred in denying his motion for release of Williams' mental health records, pursuant to the Mental Health Procedures Act ("MHPA") and by precluding Brinkley from cross-examining Williams about a competency examination he underwent in Williams' own prosecution and any mental health diagnosis rendered during that examination. He further challenges the court's determination that he could not call a rebuttal witness who would allegedly have testified that Williams had told him he suffered from schizophrenia and drug-induced psychosis. He claims the court's ruling denied the jury an opportunity to weigh Williams' credibility.

The MHPA provides that "[a]ll documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except" to those engaged in providing treatment to the person, the county administrator pursuant to section 110, a court "in the course of legal proceedings authorized by this act," pursuant to a federal rule, statute, or regulation governing disclosure, or a covered entity. 50 P.S. § 7111(a).

"When a witness suffers from a mental disability relevant to his or her ability to accurately observe, recall or report events, the jury must be informed of the disability in order to assist it in properly assessing the weight and credibility of the witness's testimony." ***Commonwealth v. Davido***, 106

A.3d 611, 637 (Pa. 2014) (citation omitted). "The evidence can be said to affect credibility when it shows that the witness's mental disorganization impaired his or her capacity to observe an event at the time of its occurrence, to maintain a clear recollection of it, or to communicate the observation accurately and truthfully at trial." *Id.*

The trial court concluded that under the MHPA's plain language, it was proper to deny the request for Williams' mental health records, as the records were confidential and could not be released to anyone without Williams' consent. Tr. Ct. Op. at 58. It further concluded that the evidence of Williams' alleged mental health condition was not admissible because no evidence suggested Williams was unable to coherently explain the conversations to the detectives or that he was unable to understand his conversations with Brinkley at the time those conversations occurred. This was not an abuse of discretion. Following review of the certified record, briefs, relevant case law, and the well-reasoned trial court opinion of the Honorable William R. Carpenter, we affirm on the basis of the trial court opinion. *See id.* at 55-60.

Brinkley claims the court erred when it allowed the Commonwealth to introduce evidence of his Instagram conversations and postings where the Commonwealth did not provide reasonable notice. He claims the record is "devoid of the Commonwealth setting forth any such good cause and/or the Trial Court excusing the Commonwealth for the same." Brinkley's Br. at 17. Brinkley maintains the Commonwealth must provide notice of its intent to seek admission of evidence of other crimes, wrongs, or acts. He claims the

- 13 -

Commonwealth never provided notice of its intent to seek the admission of the Instagram posts and conversations admitted at trial. The trial court overruled Brinkley's objection.

The version of Pennsylvania Rule of Evidence 404(b)(3) in effect at the time of trial provided that "the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial." **See** Rule 404(b)(3).[4] "The purpose of this rule is to prevent unfair surprise, and to give the defendant reasonable time to prepare an objection to, or ready a rebuttal for, such evidence." **Commonwealth v. Lynch**, 57 A.3d 120, 125-26 (Pa.Super. 2012) (internal quotation marks and citation omitted). At the time of Brinkley's trial, the Commonwealth did not need to provide written notice for the evidence to be admissible. Pa.R.Evid. 404(b)(4), amended Dec. 2, 2021. Pennsylvania courts had held that sufficient notice existed where the prior bad acts evidence was discussed during a pre-trial conference or where the defense received the evidence in discovery. **Commonwealth v. Stallworth**, 781 A.2d 110, 118

_____

[4] Effective April 1, 2022, the Rule now provides for written notice: "(3) Notice in a Criminal Case. In a criminal case the prosecutor must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial." Pa.R.Evid. 404(b)(3).

n.2 (Pa. 2001); **Commonwealth v. Mawhinney**, 915 A.2d 107, 110 (Pa.Super. 2006).

Here, the trial court concluded the Commonwealth provided reasonable notice. It pointed out that the discovery items Brinkley challenged in his motion *in limine* included social media posts related to BGB and Brinkley; the Commonwealth had noted Brinkley's Instagram handle referred to RMO, which was associated with and a foundation for BGB; and his Instagram account referenced "Long Live Bud Savage." The court noted that defense counsel had argued the Commonwealth could not authenticate the posts and, at two pre-trial hearings, the Commonwealth stated that it intended to use the social media accounts as evidence. The court found the discovery provided, the Commonwealth's responses to Brinkley pre-trial motion, and its arguments at the hearings, meant that there was no surprise and that Brinkley had sufficient time to prepare. It found the claim failed. After review of the certified record, the parties' briefs, the relevant case law, and the well-reasoned trial court opinion, we affirm on the basis of the trial court opinion. **See** Tr. Ct. Op. at 46-50.

### B. Motion to Suppress Grand Jury Testimony

In his fifth issue, Brinkley claims the court erred in denying his motion to suppress his grand jury testimony. He claims the testimony was taken in violation of his right against self-incrimination. Brinkley maintains the Commonwealth informed the trial court at the grand jury hearing that Brinkley was not a target of investigation, even though he was a target at that time.

Brinkley notes that prior to the testimony, the police had interviewed witnesses regarding Brinkley's whereabouts on the night of the murder, reviewed surveillance footage of Brinkley's whereabouts, interrogated witnesses before the grand jury regarding his whereabouts, and obtained and executed search warrants for his DNA. He claims the court read him his rights as a witness.

In *Commonwealth v. Williams*, 565 A.2d 160, 165 (Pa.Super. 1989), this Court rejected the appellant's contention that it was improper for the Commonwealth to permit him to testify before a grand jury without counsel and without immunization where he was a "target" of the investigation, not merely a witness. There, the trial court had advised the appellant of his rights, including his right to counsel and right to refuse to answer a question if his answer would result in self-incrimination. We stated that, if he was a target, the Commonwealth was not required to advise him of this fact. *Id.* at 166. We cited *United States v. Washington*, 431 U.S. 181 (1977), which stated that "[b]ecause target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination, potential defendant warnings add nothing of value to protection of Fifth Amendment rights." *Williams*, 565 A.2d at 166 (quoting *Washington*, 431 U.S. at 1820).

Here, before testifying at the grand jury, the court read Brinkley his rights, including his right to counsel and his right against self-incrimination. After his first appearance, shortly after questioning commenced, Brinkley stated he wanted to speak with an attorney and the questioning stopped.

Brinkley appeared before the grand jury a second time, with the assistance of counsel. The trial court concluded his grand jury testimony was admissible because whether he was a target did not affect his rights:

> Whether Brinkley was identified as a target rather than a witness, the rights given to him would have been the same. As having been identified as a witness, he was advised of his right to secure legal representation, that if he could not afford an attorney one would be appointed, that he may consult with that attorney during his testimony. He was further advised of his right to refuse to answer any questions. Brinkley stated that he understood his rights, and in fact exercised his right to stop questioning and to retain an attorney before he provided testimony. Had he been identified as a suspect, the rights given to him would have remained the same. **See**[] ***Commonwealth v. Williams***, 565 A.2d 160, 164-165 (Pa.Super. 1989) (even if defendant was a "target" of grand jury investigation, the Commonwealth was not required to advise him of that fact and therefore it was not improper for Commonwealth to allow defendant, who was given option of acquiring services of an attorney as well as refusing to answer any questions which might incriminate him but who chose to offer perjured testimony, to testify without counsel and without immunity).

Tr. Ct. Op. at 54-55.

The trial court did not abuse its discretion. Here, even if Brinkley was a target at the time of his grand jury testimony, he would have been afforded the same rights as he was afforded as a witness. This claim lacks merit.

## C. Sufficiency of the Evidence

Brinkley claims the court erred in denying his motion for a judgment of acquittal and/or new trial where the Commonwealth failed to establish the elements of murder in the first degree and conspiracy to commit murder

beyond a reasonable doubt. He maintains the Commonwealth failed to establish that Brinkley killed Robinson and therefore failed to establish first-degree murder. He further contends the Commonwealth did not prove that he agreed with other persons to engage in murder and therefore failed to prove conspiracy.

When reviewing a sufficiency challenge, we "evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (citation omitted). Evidence is sufficient where the Commonwealth has proven each element of the crime beyond a reasonable doubt. *Id.* at 337 (citation omitted). The Commonwealth may meet its burden "by means of wholly circumstantial evidence." *Id.* (citation omitted). Additionally, the fact finder "is free to believe all, part, or none of the evidence." *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).

First degree murder is a criminal homicide committed by an "intentional killing." 18 Pa.C.S.A. § 2502(a). "Intentional killing" is defined as "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). The elements of first-degree murder are: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011).

To convict a defendant of criminal conspiracy, the Commonwealth must establish that: "(1) [he] entered into an agreement to commit or aid in the commission of a crime; (2) he shared the criminal intent with that other person; and (3) an overt act was committed in furtherance of the conspiracy." **Commonwealth v. Knox**, 50 A.3d 749, 755 (Pa.Super. 2012) (citation omitted). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." **Id.** "[E]ach member of a conspiracy to commit homicide can be convicted of first-degree murder regardless of who inflicted the fatal wound." **Commonwealth v. Montalvo**, 956 A.2d 926, 932 (Pa. 2008).

Here, the trial court concluded the Commonwealth presented sufficient evidence to prove first-degree murder and conspiracy. The court noted Brinkley was seen with Lee and Goins before the murder and shortly after the murder, the cell phone records place him and Goins in the area of the murder at the relevant time, he and Lee were members of the BGB gang and Goins was associated with BGB, BGB was linked with drug dealing in Pottstown, and Brinkley confided in another inmate the details of his involvement in the murder. We agree with the trial court and, after review of the record, the parties' briefs, and the relevant case law, we affirm on the basis of the trial court opinion. **See** Tr. Ct. Op. at 63-67.

### D. The Verdict Was Not Against the Weight of the Evidence

Finally, Brinkley claims the court erred in denying his motion for a new trial because the verdict was against the weight of the evidence. He claims

- 19 -

the Commonwealth presented no evidence that proved the existence of a conspiracy to commit the killing of Robinson. He further claims there was no evidence Brinkley was engaged in the trafficking of controlled substances such that he would have a motive to kill Robinson.

A weight claim is for the trial court in the first instance. *See Commonwealth v. Stiles*, 143 A.3d 968, 980 (Pa.Super. 2016). The trial court may sustain a weight challenge and grant a new trial only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (quoting *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999)). We review the trial court's rejection of a challenge to the weight of the evidence for an abuse of discretion. *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa.Super. 2017).

The trial court concluded that Brinkley's Rule 1925(b) statement and post-sentence motion failed to explain why the evidence was unreliable or explain whose testimony was not credible and concluded that "without more specificity [it was] unable to address th[e] issue on appeal." Tr. Ct. Op. at 69. This was not an abuse of discretion. Brinkley merely alleged the verdict was against the weight of the evidence, without presenting argument or

explanation in support of the claim. He therefore did not properly raise the issue in the trial court and cannot raise it now. ***See*** Pa.R.A.P. 302(a).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2024